**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

LEASING SERVICES, LLC,

        Plaintiff,

v.                                                            Case No. 10-CV-695

I.A.M. NATIONAL PENSION FUND, and
NATIONAL I.A.M. BENEFIT TRUST FUND,

        Defendants.

---

# ORDER

On February 15, 2011, defendants I.A.M. National Pension Fund and National I.A.M. Benefit Trust Fund (collectively, "I.A.M.") filed a Motion to Modify Scheduling Order and for Leave to Amend (Docket #15). The motion seeks leave to modify the court's scheduling order, allowing them to amend their answer by adding a third-party defendant, asserting an additional counterclaim and third-party claim, and adding an affirmative defense. The motion also requests a new discovery cut-off date and dispositive motion deadline after service on the proposed third-party defendant.

## BACKGROUND

The case arises from an alleged default by I.A.M. on the terms of two leases entered into with United Leasing Associates of America, Ltd. ("United Leasing"). United Leasing assigned those leases to plaintiff Leasing Services, LLC ("Leasing Services"). The leases are for Sharp brand copiers. According to its proposed

amended answer and counterclaims, I.A.M. alleges that it negotiated the leases with a third-party vendor, Union Office Solutions ("Union"), that acted as an agent for United Leasing and represented to I.A.M. that the cost of the leases would be below normal dealer cost for the copiers. I.A.M. alleges that the costs were in fact higher than normal dealer cost. I.A.M. now wishes to assert fraudulent inducement as an affirmative defense, as well as a counterclaim against Leasing Services for rescission and restitution. I.A.M. also asks to add United Leasing as a third-party defendant, asserting against it the same claim for rescission and restitution. The additional claims assert that Union acted as United Leasing's agent at all times relevant. The court's original Scheduling Order (Docket #11) set a December 1, 2010 deadline for amending pleadings and a March 15, 2011 deadline for completion of discovery.

I.A.M. asserts that during discovery it sought information related to the relationship between Union and United Leasing as well as information related to the cost of the equipment at issue. According to I.A.M., both Leasing Services and Union were non-responsive, leading I.A.M. to seek third-party discovery directly from Sharp regarding equipment pricing. Upon production by Sharp, I.A.M. concluded that the lease costs were in fact in excess of normal dealer costs and thus filed the instant motion less than ten days after receiving the discovery from Sharp.

## ANALYSIS

Because I.A.M. has established good cause and finding no just reason to deny amendment, the court will grant the motion. Where a party seeks to amend a pleading beyond the date contained in a scheduling order, such request is also inherently a request to modify the schedule. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). In order to modify a schedule, the movant must show "good cause." Fed. R. Civ. P. 16(b)(4). The good cause standard "primarily considers the diligence of the party seeking amendment." *Trustmark*, 424 F.3d at 553. Beyond the good cause standard, an amendment at this stage may only be made with leave of the court, to be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Reasons for denying leave include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, and futility. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Good cause exists for I.A.M. to add the affirmative defense of fraud in the inducement and claims for rescission and restitution based on its diligence in seeking pricing information. Leasing Services failed to provide pricing information and, upon receipt directly from Sharp, I.A.M. filed the instant motion in extremely short order. The factual basis for the affirmative defense and counterclaim, i.e., the pricing information, was unknown until receipt of the discovery. Nothing presented to the court suggests that I.A.M. was anything but diligent.

Leasing Services asserts a variety of reasons that I.A.M. has failed to show good cause (though a number are in reality aimed at the Rule 15 standard), but none are persuasive. Leasing Services first asserts that "it was the defendants' understanding that the leases were covered under a written agreement between the defendants and Union Office Solutions," but that I.A.M.'s claim that it only recently discovered this information is false. (Pl.'s Opp. Br. 2) (Docket #15). It is not clear how this statement is relevant to determining good cause. I.A.M. does not claim that it only recently learned that the terms of the lease were governed by an agreement with Union; it claims that Union fraudulently induced entry into the contract, as shown by pricing evidence only recently discovered. As noted above, I.A.M. has established that it was diligent in seeking the pricing information and moving to amend upon its receipt. Similarly, Leasing Services next asserts that I.A.M. has, at all times, been aware of Union's role in the transactions, but again, awareness of Union's role would not establish the grounds for fraudulent inducement or rescission without the pricing evidence. Leasing Services also takes issue with the request to add United Leasing as a third-party defendant, stating that I.A.M. has "fail[ed] to provide good cause why the assignee of the contracts is a necessary party," stating that I.A.M. cannot claim a lack of previous knowledge of the assignee. The court assumes that Leasing Services means "assignor" here, as the "assignee" is already a party (Leasing Services). Again, the basis for I.A.M.'s asserted third-party claim arises from the newly discovered pricing evidence, not knowledge of United

Leasing's status as the assignor; I.A.M. has satisfied the court as to its diligence with regard to the pricing evidence. Thus, none of these arguments carry any weight.

Leasing Services next attacks the fact that I.A.M.'s new claims rely heavily on establishing that Union was its agent. Though tangentially claiming a lack of good cause, the arguments are substantively aimed at the Rule 15 standard as they focus on prejudice and futility. Leasing Services first points to lease terms which state, "[n]either the supplier, broker nor any salesperson is an agent of Lessor or its assignee nor are they authorized to waive or alter the term of this lease. Their representation shall in no way affect Lessee or Lessor's rights and obligations as herein set forth."[1] Leasing Services offers this point in order to show that amendment would be futile, as Union is supposedly not an agent under the contract. However, as I.A.M. points out, Wisconsin does not allow integration clauses or clauses barring liability for false representations to preclude defenses or assertions of fraud in the inducement. *Anderson v. Tri-State Home Improvement Co.*, 67 N.W.2d 853, 857 (Wis. 1955). Thus, the amendment would not be futile simply because of the cited lease provision.

Leasing Services also complains that questions of agency are complicated and it would, therefore, be prejudiced by the amendment because of the extra delay that would be injected into the case. It cites to one case, *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843 (7th Cir. 2002), but that case establishes only

---

[1] The terms for both leases include this language.

that the movant showed prejudice under those facts. There, the district court denied amendment after the scheduling order had already been amended once and the movant filed its motion six days before the close of discovery, seeking an amendment that "reflected a complete reversal in trial strategy." *Id.* at 846-47. The Seventh Circuit upheld the decision as within the district court's discretion because the movant did not show any diligence and the "agency defense would have complicated th[e] straightforward breach of contract dispute by raising additional, complex issues *merely six days prior to the discovery deadline.*" *Id.* at 850. Here, I.A.M. has established diligence and good cause, unlike in *Campania*; in fact, it would appear that I.A.M. would suffer greater prejudice were the court not to grant the amendment.[2] Moreover, Leasing Service's arguments that it would be prejudiced by delay in litigation, increased attorney fees, increased discovery costs, and delay in recovery are unpersuasive given its foot-dragging in the discovery process. Likewise, though extension of the discovery deadline will literally delay the case, it alleviates the prejudice otherwise present where a claim is added without time for discovery. In sum, the court finds no undue prejudice sufficient to deny the motion under Rule 15.

Finally, Leasing Services argues that I.A.M. was not diligent because Leasing Services never prevented I.A.M. from obtaining the pricing information, nor did it fail

---

[2]Leasing Services also claims the time between this motion and the close of discovery was similarly short, supposedly one week; but the motion here was *filed* one month before the discovery deadline.

to provide requested discovery. I.A.M. then points to a request for production that might be construed as including the pricing evidence and claims it complied with the request. Leasing Services does appear to have complied with that request, yet its briefing completely ignores two later requests, five and six, which clearly and obviously implicate pricing information. (Defs.' Reply Br. Ex. 1, at 7) (Docket #17). Those production requests ask for "all leases between yourself and any third party covering the lease of any Sharp Copiers . . . entered into at any time after January 1, 2009" and production of "all documents and correspondence between yourself and the Sharp Corporation relating to the purchase of any Sharp Copier . . . for the period January 1, 2008 to the present." (*Id.*). In its discovery response, Leasing Services merely objects, cites the integration clause of the lease, and refuses to comply with the request. The argument that Leasing Services complied with discovery and did not withhold the information is slightly disingenuous. Further, without expressing an opinion on the propriety of Leasing Service's objection, the response generally alleviates I.A.M. of responsibility for failing to procure the pricing information sooner than it did. Just because Leasing Services did not actively prevent I.A.M. from obtaining the pricing information directly from Sharp does not somehow establish a lack of diligence. A party can generally be expected to seek discovery first from its party-opponent. Only after it was rebuffed by Leasing Services was I.A.M. forced to go directly to Sharp.

Last, Leasing Services offers a few brief parting arguments that restate a number of the arguments disposed of above. The arguments are no more persuasive in this portion than before. As such, I.A.M. has shown sufficient good cause to modify the scheduling order and amend its complaint, and there is no reason to otherwise deny the amendment.

Accordingly,

**IT IS ORDERED** that the defendants' Motion to Modify Scheduling Order and for Leave to Amend (Docket #15) be and the same is hereby **GRANTED**; the court will issue a further order for a scheduling conference in order to set new discovery and dispositive motion deadlines after receipt of the third-party defendant's answer.

Dated at Milwaukee, Wisconsin, this 18th day of April, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge